**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| SPECIALTY PRODUCTS HOLDING CORP., | : | Case No. 10-11780 (PJW) |
| *et al.,*[1] | : |  |
|  | : | (Joint Administration Requested) |
| Debtors. | : |  |
|  | : |  |

**MOTION OF REPUBLIC POWDERED METALS, INC.
AND NMBFiL, INC. FOR AN ORDER (I) DIRECTING THE
JOINT ADMINISTRATION OF THEIR CHAPTER 11 CASES AND
(II) EXTENDING TO THEM CERTAIN RELIEF GRANTED TO
SPECIALTY PRODUCTS HOLDING CORP. AND BONDEX INTERNATIONAL, INC.**

Republic Powdered Metals, Inc. ("Republic") and NMBFiL, Inc. ("NMBFiL" and, together with Republic, the "New Debtors") hereby move the Court for the entry of an order (i) directing the joint administration of the New Debtors' chapter 11 cases, for procedural purposes only, with the chapter 11 cases of Specialty Products Holding Corp. ("SPHC") and Bondex International, Inc. ("Bondex" and, together with SPHC, the "Initial Debtors") and (ii) extending, with certain modifications, to the New Debtors certain relief granted to the Initial Debtors. In support of this motion, the New Debtors rely on the Declaration of Tracy Crandall in Support of First Day Pleadings (the "First Day Declaration") filed contemporaneously herewith and the Declaration of Kathleen M. Logan, a copy of which is attached hereto as Exhibit A (the "Logan Declaration"), and further respectfully state as follows:

---

[1]     The Debtors are the following four entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Specialty Products Holding Corp. (0857); Bondex International, Inc. (4125); Republic Powdered Metals, Inc. (4388); and NMBFiL, Inc. (2441). The address of Specialty Products Holding Corp. and Bondex International, Inc. is 4515 St. Clair Avenue, Cleveland, Ohio 44103. The address of Republic Powdered Metals, Inc. and NMBFiL, Inc. is 2628 Pearl Road, Medina, Ohio 44256.

**Background**

1.      On May 31, 2010, Specialty Products Holding Corp. ("SPHC") and

Bondex International, Inc. ("Bondex" and, together with SPHC, the "Initial Debtors") each

commenced a reorganization case by filing a voluntary petition for relief under chapter 11 of the

Bankruptcy Code.  On August 15, 2014, NMBFiL, Inc. ("NMBFiL") filed a voluntary petition

for relief under chapter 11 of the Bankruptcy Code.  On the date hereof, Republic (together with

NMBFiL, the "New Debtors") commenced a chapter 11 case.

2.      The Initial Debtors and the New Debtors (collectively, the "Debtors") are

continuing in possession of their respective properties and are managing their businesses, as

debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      On June 10, 2010, the United States Trustee for the District of Delaware

(the "U.S. Trustee") appointed a statutory committee of asbestos personal injury claimants (the

"Committee") in the Initial Debtors' cases, pursuant to section 1102 of the Bankruptcy Code.

The U.S. Trustee reconstituted the Committee on October 18, 2010 [D.I. 457] and again on

December 14, 2010 [D.I. 666].  On October 18, 2010, the Court entered an order [D.I. 374]

appointing Professor Eric D. Green as the legal representative for future asbestos claimants in the

Initial Debtors' cases (the "Future Claimants' Representative").

4.      SPHC is a wholly-owned subsidiary of non-debtor RPM International Inc.

("International"), and the holding company parent of Debtor Bondex.  The New Debtors are

indirect subsidiaries of International and affiliates of the Initial Debtors.

5.      Debtor Republic, a leader in the roof coatings and restoration industry,

provides exclusive products for roof and wall restoration, including an extensive line of roof

coatings.

6.      Debtor NMBFiL, which was formerly known as Bondo Corporation, was a manufacturer of auto body repair products for the automotive aftermarket and various other professional and consumer applications.  In November 2007, NMBFiL sold substantially all of its assets and no longer has business operations.

7.      On July 26, 2014, Republic, the Initial Debtors and International entered into a settlement term sheet (the "Republic Term Sheet") with (i) the Committee, both in its capacity as the official asbestos claimants' committee in the Initial Debtors' bankruptcy cases and in its capacity as the ad hoc asbestos claimants' committee selected for the purpose of negotiating a pre-packaged or pre-negotiated plan of reorganization for Republic, and counsel for each member of the Committee both in the capacity as counsel for members of the official asbestos claimants' committee in the Initial Debtors' bankruptcy cases and as counsel for the members of the ad hoc asbestos claimants' committee with respect to Republic, and (ii) the Future Claimants' Representative, both in his capacity as the Future Claimants' Representative appointed in the Initial Debtors' bankruptcy cases and in his capacity as the future claimants' representative selected by Republic and the Committee, setting forth the parties' agreement in principle to resolve all present and future asbestos personal injury claims related to the Initial Debtors and Republic.

8.      On the same date, NMBFiL and International entered into a settlement term sheet (together with the Republic Term Sheet, the "Term Sheets") with (i) an ad hoc committee of law firms representing asbestos claimants that have pursued and presently are pursuing claims against NMBFiL, and (ii) the Future Claimants' Representative, in his capacity as the future claimants' representative selected by NMBFiL and the ad hoc committee, setting

forth the parties' agreement in principle to resolve all present and future asbestos personal injury claims related to NMBFiL.

9.      The Term Sheets contemplate the filing of a consolidated plan of reorganization for the Debtors that will provide for the creation and funding of a trust or trusts established under section 524(g) of the Bankruptcy Code for the benefit of current and future asbestos personal injury claimants of the Debtors.

## Relief Requested

10.      By this motion, the New Debtors seek entry of an order (a) directing the joint administration of their chapter 11 cases, for procedural purposes only, with the Initial Debtors' cases and (b) extending, with certain modification, to the New Debtors certain of the "first day" and administrative relief granted to the Initial Debtors.[2]

### *Request for Joint Administration*

11.      The New Debtors request, pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure and Rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), that the New Debtors' chapter 11 cases be consolidated for procedural purposes only and jointly administered with the Initial Debtors' chapter 11 cases.  In accordance with the Court's Order Directing the Joint Administration of the Debtors' Chapter 11 Cases [D.I. 31] (the "Joint Administration Order"), the Initial Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being administered jointly.

12.      Bankruptcy Rule 1015(b) provides that, if two or more petitions are

---

[2]      For purposes of the below requests, unless otherwise indicated, any reference to the "Petition Date" in an order with respect to the Initial Debtors shall, as extended to the New Debtors, be amended to mean August 15, 2014, with respect to NMBFiL and August 31, 2014, with respect to Republic.  Similarly, unless otherwise indicated, any reference to "Debtors" shall mean the Initial Debtors and the New Debtors.

pending in the same court by or against a debtor and an affiliate, "the court may order a joint

administration of the estates."  Local Rule 1015-1 states that:

> An order of joint administration may be entered, without notice
> and an opportunity for hearing, upon filing of a motion for joint
> administration . . . supported by an affidavit, declaration or
> verification, which establishes that the joint administration of two
> or more cases pending in this Court under title 11 is warranted and
> will ease the administrative burden for the Court and the parties.

The New Debtors, which are indirect, wholly owned subsidiaries of International, are "affiliates,"

as that term is defined in section 101(2) of the Bankruptcy Code.  Moreover, the Initial Debtors

and the New Debtors are affiliates, as the Initial Debtors are also direct or indirect subsidiaries of

International.  An order of joint administration relates to the routine administration of a case and

may be entered by the Court on an ex parte basis.  See Local Rule 1015-1.  Accordingly, this

Court is authorized to grant the relief requested herein.

13.     The joint administration of the New Debtors' chapter 11 cases with the

Initial Debtors' chapter 11 cases will permit the Clerk of the Court to continue to utilize a single

general docket for these cases and, in most instances, combine required notices to creditors of the

New Debtors' and the Initial Debtors' respective estates and other parties in interest.  Joint

administration will enable parties in interest in each of the above-captioned chapter 11 cases to

be apprised of the various matters before the Court in any of the Debtors' cases.  The Court also

will be relieved of the burden of entering duplicative orders and maintaining redundant files in

separate cases.  Finally, because this is not a motion for the substantive consolidation of the

Debtors' estates, the rights of parties in interest will not be prejudiced or otherwise affected in

any way by the entry of an order directing the joint administration of the New Debtors'

chapter 11 cases with the Initial Debtors' chapter 11 cases for procedural purposes only.

14.     For all of the foregoing reasons, the New Debtors respectfully request the immediate entry of an order, on an ex parte basis, providing for the joint administration of the New Debtors' chapter 11 cases with the jointly administered chapter 11 cases of the Initial Debtors, pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

15.     The New Debtors request that, for all pleadings, parties in interest shall be permitted and directed to use the consolidated caption authorized by this Court's Order Directing the Joint Administration of the Debtors' Chapter 11 Cases [D.I. 31].  That caption indicates that any pleading filed relates to the jointly administered bankruptcy cases of "Specialty Products Holding Corp., *et al.*"  The footnote in the caption will be modified to include the New Debtors' addresses and tax identification numbers.  Finally, the New Debtors request that a docket entry be made on the docket in the chapter 11 cases of each of the New Debtors substantially as follows:

> An order has been entered in this case directing the procedural consolidation and joint administration of the chapter 11 cases of Specialty Products Holding Corp., Bondex International, Inc., Republic Powdered Metals, Inc. and NMBFiL, Inc.  The docket of Specialty Products Holding Corp. in Case No. 10-11780 (PJW) should be consulted for all matters affecting this case.

***Request for Extension of Certain Noticing Procedures and Related Relief***

16.     The New Debtors request that certain relief granted to the Initial Debtors pursuant to the Court's Order Authorizing (I) The Filing Of (A) A Consolidated List Of Creditors And (B) A Consolidated List Of The Thirty Asbestos Plaintiff Firms With The Largest Number Or Scope Of Asbestos Cases Against The Debtors; And (II) Certain Notice Procedures For Asbestos Claimants [D.I. 34] (the "Consolidated Creditor List and Notice Procedures Order") apply to them.

17.     The Consolidated Creditor List and Notice Procedures Order authorized the Initial Debtors to (i) file a consolidated list of all their creditors and parties in interest; (ii) serve all notices, mailings and other communications related to their chapter 11 cases on the asbestos personal injury claimants (collectively, the "Asbestos Claimants") care of their counsel of record at such counsel's address (the "Notice Procedures"); and (iii) file a consolidated list of the thirty asbestos personal injury firms with the largest number or scope of asbestos cases against any of the Initial Debtors in lieu of listing the individual top Asbestos Claimants with the largest unsecured claims against the Initial Debtors on the Initial Debtors' list of the twenty largest unsecured claims.

18.     The New Debtors request that the Court likewise authorize the New Debtors to each file a list (each, an "Asbestos Creditor List") of the law firms with asbestos cases against each of the New Debtors in lieu of listing the individual Asbestos Claimants with the largest unsecured claims against the Initial Debtors.  In addition, the New Debtors request that the Court authorize the New Debtors to employ the Notice Procedures.  In order to implement the Notice Procedures, the New Debtors will list the names and addresses of the asbestos plaintiff firms in their respective lists of all creditors and parties in interest (the "Creditor Matrices") in lieu of listing the individual Asbestos Claimants' addresses.  Unlike the Initial Debtors, the New Debtors each have distinct claimants and therefore do not seek to file a consolidated list of creditors.

19.     The New Debtors submit that the Asbestos Creditor Lists reflect the creditors with the greatest interest in the New Debtors' cases.  As discussed in the First Day Declaration, the New Debtors commenced these chapter 11 cases to seek confirmation of a plan of reorganization on the terms set forth in the Term Sheets that, if confirmed, will permanently

resolve all present and future asbestos personal injury claims related to the Debtors.  Under the plan, the only impaired class will be the Asbestos Claimants.  As a result, the New Debtors submit that the Asbestos Creditor Lists accurately reflect the claimants with the greatest interest in these cases.

20.     The New Debtors also anticipate that the U.S. Trustee will appoint an official committee of asbestos claimants in each of the New Debtors' cases.  Because asbestos creditors' committees typically consist of asbestos plaintiff firms, providing the U.S. Trustee with lists of the plaintiff firms with asbestos cases against each of the New Debtors will better assist the U.S. Trustee in forming such a committee.

21.     Finally, as with the Initial Debtors, the Notice Procedures are necessary and appropriate in these cases because, while the New Debtors have contact information for counsel of record to the Asbestos Claimants, the contact information for the individual Asbestos Claimants is generally not readily available.  Further, the New Debtors have communicated solely with asbestos counsel and continuing to do so through the Notice Procedures will avoid any confusion that would arise from sending notices directly to Asbestos Claimants.

### *Request for Extension and Modification of the Interim Compensation Order*

22.     On August 24, 2010, the Court entered the Amended Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [D.I 339] (the "Interim Compensation Order") in the Initial Debtors' cases.  The Interim Compensation Order principally provides the procedures under which all retained professionals must seek interim payment of compensation and reimbursement of expenses.  To ensure that the New Debtors' and Initial Debtors' cases are efficiently administered and to avoid the burden of having dual interim compensation orders, the New Debtors seek to extend to them the application of the Interim Compensation Order, as amended below.

23.     The New Debtors request that the Interim Compensation Order be amended in the following manner (capitalized terms not otherwise defined below shall have the meanings given to them in the Interim Compensation Order).

24.     First, the New Debtors' Interim Fee Period shall commence with the period ending September 30, 2014.  The first Interim Fee Application for the period from each New Debtors' respective petition date through September 30, 2014 must be filed and served on or before December 1, 2014.

25.     Second, the Debtors shall be responsible for paying allowed professional fees and expenses incurred in these chapter 11 cases based on the following allocations:  (a) for tasks performed for a specific Debtor, 100% by that Debtor except that Bondex's fees and expenses shall, as before, be paid by SPHC; (b) for tasks performed for the Initial Debtors, 100% by SPHC; (c) for tasks performed for the New Debtors, 50% by each New Debtor; (d) for tasks performed for the New Debtors plus SPHC and/or Bondex, 95% by SPHC, 2.5% by Republic and 2.5% by NMBFiL.[3]  The Monthly Fee Applications shall disclose the allocations made during that month.

***Request for Extension and Modification of the Ordinary Course Professionals Order***

26.     On July 14, 2010, the Court entered the Order Authorizing the Retention and Payment of Certain Professionals Utilized by the Debtors in the Ordinary Course of Business [D.I. 232] (the "OCP Order") in the Initial Debtors' cases.  The OCP Order (i) authorized the Initial Debtors to retain, employ and pay certain professionals in the ordinary course and (ii) provides the procedures and limitations governing how and when professionals may be retained  and compensated as ordinary course professionals by the Initial Debtors.  To ensure that

---

[3]      This allocation is based upon the respective book values of the assets of SPHC, Republic and NMBFiL.

the New Debtors' and Initial Debtors' cases are efficiently administered and to avoid the burden

of having dual ordinary course professional orders, the New Debtors seek to extend the OCP

Order, as amended in certain respects, to apply to the New Debtors.[4]

27.    In the event the services of Ordinary Course Professionals are required by

the New Debtors, the New Debtors request that they be permitted to file the quarterly statement

of Ordinary Course Professionals required by paragraph 3(f) of the OCP Order with any such

statement filed by the Initial Debtors, notwithstanding the New Debtors' respective petition

dates.  Thus, the first such report for the New Debtors will be filed on October 15, 2014 for the

period from each New Debtors' respective petition dates through September 30, 2014.  Similarly,

the New Debtors request that they be permitted to provide the monthly reports required in

paragraph 4 of the OCP Order beginning on October 15, 2014.

***Request for Extension of the Fee Auditor Order***

28.    On August 13, 2010, the Court entered the Order Appointing Fee Auditor

and Establishing Related Procedures Concerning (A) the Allowance and Payment of

Compensation and Reimbursement of Expenses of Professionals and Members of Official

Committees and (B) Consideration of Fee Applications [D.I. 302] (the "Fee Auditor Order") in

the Initial Debtors' cases.  To ensure that the New Debtors' and Initial Debtors' cases are

efficiently administered and recognizing that professionals will file consolidated fee applications

pursuant to the terms of the Interim Compensation Order, the New Debtors also seek to extend to

them the Fee Auditor Order.

---

[4]    The New Debtors have not identified any ordinary course professionals at this time and do not presently
seek to pay any ordinary course professionals.

***Request for Extension of the Order (I) Appointing Logan & Company, Inc. As Claims And Noticing Clerk And (II) Approving Form And Manner Of Notice Of The Commencement Of Chapter 11 Cases***

29.     On June 7, 2010, the Court entered an order in the Initial Debtors' cases (i) appointing Logan & Company, Inc. ("Logan") as claims and noticing clerk and (ii) approving the form and manner of notice of the commencement of the Initial Debtors' chapter 11 cases [D.I. 48] (the "Logan Order").  In order to efficiently administer the New Debtors' and Initial Debtors' cases, the New Debtors request that the Court extend to them the relief granted to the Initial Debtors in the Logan Order.  Logan has served as claims and noticing clerk to the Initial Debtors for over four years and has gained valuable institutional knowledge that will allow Logan to efficiently provide the services approved in the Logan Order to the New Debtors.

30.     The New Debtors propose to engage Logan on the same terms and conditions set forth in the agreement between Logan and the Initial Debtors (the "Logan Agreement") approved in the Logan Order.  A copy of the engagement letter between Logan and the Initial Debtors and a copy of a letter reflecting the engagement of Logan by the New Debtors, are attached hereto as Exhibit B.

31.     Pursuant to Local Rule 2002-1(f) and the Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c), dated February 1, 2012 (the "Protocol"), claims and noticing agents are now subject to, among other things, retention under section 327(a) of the Bankruptcy Code if they are to perform certain tasks for the debtor, including preparing the debtor's schedules of assets and liabilities and statement of financial affairs and acting as balloting and tabulation agent.  Although Logan will likely assist the New Debtors with the preparation of their schedules and statement of financial affairs, the New Debtors respectfully request that they not be required to retain Logan under section 327(a) of the Bankruptcy Code, as contemplated by the Protocol.  Logan is already providing services to the Initial Debtors without

having been retained as a section 327(a) professional because the Initial Debtors' cases were filed

prior to the adoption of the Protocol.  In light of the nature of the New Debtors' cases, which

were commenced to seek confirmation of an agreed upon plan of reorganization for all the

Debtors, the New Debtors submit that the retention of Logan on the same terms that it was

retained by the Initial Debtors is warranted and will avoid unnecessary administrative burden.

### Consent to Jurisdiction

32.     Pursuant to Local Rule 9013-1(f), the New Debtors consent to the entry of

a final judgment or order with respect to this motion if it is determined that the Court would lack

Article III jurisdiction to enter such final order or judgment absent consent of the parties.

### Notice

33.     Notice of this motion will be provided to:  (a) the U.S. Trustee; (b) counsel

to the Committee; (c) counsel to the Future Claimants' Representative; (d) the law firms with

pending asbestos personal injury cases against the New Debtors, as identified in each New

Debtor's chapter 11 petition; and (e) counsel to International.  As this motion is seeking first day

relief, notice of this motion and any order entered hereon will be served on all parties required by

Local Rule 9013-1(m).  Due to the urgency of the circumstances surrounding this motion and the

nature of the relief requested herein, the New Debtors respectfully submit that no other or further

notice is necessary.

WHEREFORE, the New Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as <u>Exhibit C</u>: (i) directing the joint administration of the New Debtors' chapter 11 cases, for procedural purposes only, with the Initial Debtors' chapter 11 cases; (ii) extending to the New Debtors certain relief granted in the Initial Debtors' cases; and (iii) granting such other and further relief as the Court may deem proper.

Dated: August 31, 2014
       Wilmington, Delaware

Respectfully submitted,

/s/ *Daniel J. DeFranceschi*
Daniel J. DeFranceschi (DE 2732)
Paul N. Heath (DE 3704)
Zachary I. Shapiro (DE 5103)
Tyler D. Semmelman (DE 5386)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

        -and-

Gregory M. Gordon (TX 08435300)
Dan B. Prieto (TX 24048744)
Paul M. Green (TX 24059854)
JONES DAY
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100

PROPOSED ATTORNEYS FOR NEW
DEBTORS

# **EXHIBIT A**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| SPECIALTY PRODUCTS HOLDING CORP., | : | Case No. 10-11780 (PJW) |
| *et al.,*[1] | : |  |
|  | : | (Joint Administration Requested)[2] |
| Debtors. | : |  |
|  | : |  |

## <u>DECLARATION OF KATHLEEN M. LOGAN</u>

1.      I am President of Logan & Company, Inc. ("<u>Logan</u>"), which maintains an office at 546 Valley Road, Upper Montclair, New Jersey 07043, and I am authorized to execute this declaration ("<u>Declaration</u>") on behalf of Logan.  I submit this Declaration in support of the Motion of Republic Powdered Metals, Inc. and NMBFiL, Inc. For An Order (I) Directing the Joint Administration of Their Chapter 11 Cases and (II) Extending to Them Certain Relief Granted to Specialty Products Holding Corp. and Bondex International, Inc. (the "<u>Motion</u>").[3]

2.      Logan is a data processing firm that specializes in chapter 11 administration, including noticing, claims processing, solicitation, ballot tabulation and other administrative tasks in chapter 11 cases.  Logan's assistance will expedite service of notices, streamline the claims administration process and permit the New Debtors to focus efficiently on their reorganization efforts.  Logan has provided identical or substantially similar services in

---

[1]      The Debtors are the following four entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Specialty Products Holding Corp. (0857); Bondex International, Inc. (4125); Republic Powdered Metals, Inc. (4388); and NMBFiL, Inc. (2441).  The address of Specialty Products Holding Corp. and Bondex International, Inc. is 4515 St. Clair Avenue, Cleveland, Ohio 44103. The address of Republic Powdered Metals, Inc. and NMBFiL, Inc. is 2628 Pearl Road, Medina, Ohio 44256.

[2]      On June 2, 2010, the Court entered an order [Docket No. 31] directing the joint administration of the chapter 11 cases of Specialty Products Holding Corp. and Bondex International, Inc. under Case No. 10-11780 (PJW) for administrative purposes only.  Contemporaneously with the filing of this motion, Republic Powdered Metals, Inc. and NMBFiL, Inc. filed a joint motion requesting that their chapter 11 cases be consolidated for procedural purposes only and administered jointly under Case No. 10-11780 (PJW).

[3]      Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

other chapter 11 cases in this District, including MSD Performance, Inc., USEC Inc., Specialty Products Holding Corp., JGW Holdco, LLC, Goody's, LLC, Fedders North America, Inc., NetVersant Solutions, Inc. and MPC Computers, LLC.

3.       Logan is well qualified to serve as the New Debtors' claims, noticing and balloting agent in connection with these chapter 11 cases.  In fact, Logan serves as Claims and Noticing Clerk in the two affiliated cases, Specialty Products Holding, Inc. and Bondex International, Inc.  Logan is fully equipped to handle the volume involved in properly sending the required notices to creditors and other interested parties and administering claims in these chapter 11 cases.  Logan will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156( c).

4.       Pursuant to the proposed engagement letter between Logan and the New Debtors (the "Logan Agreement"), Logan will perform the following noticing, claims management and reconciliation, plan solicitation, balloting and disbursement services, if necessary, at the request of the New Debtors and the Clerk's Office:

(a)       assist the New Debtors in the filing of the New Debtors' schedules of assets and liabilities and statements of financial affairs;

(b)       prepare and serve required notices in these chapter 11 cases, including:

(i)       notice of the commencement of these chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

(ii)      notice of the claims bar date;

(iii)     notice of objections to claims;

(iv)     notice of any hearings on a disclosure statement and confirmation of a plan of reorganization; and

(v)      such other miscellaneous notices as the New Debtors or the Court may deem necessary or appropriate for an orderly administration of these chapter 11 cases;

(c)      assist with the publication of required notices, as necessary;

(d)      within five days after the mailing of a particular notice, file with the Clerk's Office a certificate or affidavit of service that includes (i) a copy of the notice served, (ii) an alphabetical list of persons upon whom the notice was served and (iii) the date and manner of service;

(e)      maintain copies of all proofs of claim and proofs of interest filed in these cases;

(f)      maintain official claims registers in these cases by docketing all proofs of claim and proofs of interest in a claims database that includes the following information for each claim or interest asserted:

(i)      the name and address of the claimant or interest holder and any agent thereof, if the proof of claim or proof of interest was filed by an agent;

(ii)      the date the proof of claim or proof of interest was received by Logan and, if applicable, the Court;

(iii)      the claim number assigned to the proof of claim or proof of interest;

(iv)      the asserted amount and classification of the claim; and

(v)      the applicable New Debtor against which the claim or interest is asserted

(g)      implement necessary security measures to ensure the completeness and integrity of the claims registers;

(h)      transmit to the Clerk's Office a copy of the claims registers on a weekly basis, unless requested by the Clerk's Office on a more or less frequent basis;

(i)    maintain an up-to-date mailing list for all entities that have filed proofs of claim or proofs of interest in these cases and make the list available upon request to the Clerk's Office or at the expense of any party in interest;

(j)    provide access to the public for examination of copies of the proofs of claim or proofs of interest filed in these cases without charge during regular business hours;

(k)    create and maintain a public access website setting forth pertinent case information and allowing access to certain documents filed in the New Debtors' chapter 11 cases;

(l)    record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers to the extent required by Bankruptcy Rule 3001(e);

(m)    provide temporary employees, who are not present employees of the New Debtors, to process claims, as necessary;

(n)    promptly comply with such further conditions and requirements as the Clerk's Office or the Court may at any time prescribe; and

(o)    provide such other claims processing, noticing and related administrative services as may be requested from time to time by the New Debtors.

5.    The amounts charged by Logan in connection with this appointment will not exceed the amounts set forth in the Logan Agreement, except to the extent such amounts are subject to ordinary increase in accordance with Logan's established billing practices and procedures.    These rates are at least as favorable as the prices Logan charges in other chapter 11 cases in which the firm has been retained to perform similar services.  Republic has provided Logan with a security retainer in the amount of $10,000.

6.      On behalf of Logan, I represent that:

(a)      Logan will not consider itself employed by the United States government and will not seek any compensation from the United States government in its capacity as the Claims and Noticing Clerk in these chapter 11 cases;

(b)      by accepting employment in these chapter 11 cases, Logan waives any rights to receive compensation from the United States government;

(c)      in its capacity as the Claims and Noticing Clerk in these chapter 11 cases, Logan will not be an agent of the United States government and will not act on behalf of the United States government; and

(d)      Logan will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Clerk in these chapter 11 cases.

7.      To the best of my knowledge, the members and employees of Logan do not have any adverse connection with the New Debtors, the New Debtors' creditors or any other party-in-interest or their respective attorneys and accountants, the U.S. Trustee or any person employed in the office of the U.S. Trustee.

8.      To the best of my knowledge, Logan is a "disinterested person" as that term is defined in Bankruptcy Code sections 101(14) and 1107(b), in that its members and employees:

(a)      are not creditors, equity security holders or insiders of the New Debtors;

(b)      are not and were not, within 2 years before the date of the filing of the petition, a director, officer or employee of the New Debtors; and

(c)  are not creditors, equity security holders or insiders of the New

Debtors;

(d)  do not have an interest materially adverse to the interest of the

estates or of any class of creditors or equity security holders, by reason of any

direct or indirect relationship to, connection with, or interest in, the New Debtors,

or for any other reason.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and

correct.

Date:   August 31, 2014

LOGAN & COMPANY, INC.

By: */s/ Kathleen M. Logan*
Kathleen M. Logan
President

**EXHIBIT B**



## AGREEMENT FOR SERVICES

This Agreement is entered into as of the 14th day of May, 2010 between RPM. Inc., whose principal place of business is located at 4515 St. Clair Avenue, Cleveland, Ohio 44103 (hereinafter with its officers, servants, agents, employees, licensees, and subcontractors, the "Customer") and LOGAN & COMPANY, INC., whose principal place of business is located at 546 Valley Road, Upper Montclair, New Jersey 07043 (hereinafter with its officers, servants, agents, employees, licensees, and subcontractors, "Logan") and continue until either party shall exercise its rights of suspension or termination as set forth below.

## TERMS AND CONDITIONS

I. SERVICES

    A.    Logan agrees to be Customer's claims, noticing, and balloting agent and, upon request, to aid Customer in preparing its schedules of assets and liabilities and/or schedules of financial affairs (collectively, the "Schedules"). Such services are clerical in nature and include, but are not limited to, providing balloting and solicitation services to Customer as proponent of a plan(s) of reorganization, reconciling claims, and acting as the official claims agent in lieu of the Office of the Clerk (the "Clerk's Office) of the United States Bankruptcy Court for the District in which Customer files its bankruptcy petition (the "Bankruptcy Court") in:

        i.    serving notices to parties in interest or as otherwise directed by the Customer or the Bankruptcy Court and shredding undeliverable mail twelve months after the closing of Customer's bankruptcy case or thereafter as directed by the Bankruptcy Court;

        ii.    maintaining all proofs of claim and proofs of interest filed in the bankruptcy case(s) that Logan receives (collectively, the "Claims") and returning the Claims to, or as directed by, the Clerk's Office, upon the earlier of the termination of Logan's services and the closing of the bankruptcy case;

        iii.    docketing all the Claims;

        iv.    maintaining and transmitting to the Clerk's Office the official claims registers;

> v. maintaining current mailing lists of all entities that have filed Claims and notices of appearance Logan receives;
>
> vi. providing the public access for examination to all the Claims at its premises during regular business hours and without charge; and
>
> vii. recording all transfers Logan receives, pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedures.

B. Customer agrees to confirm the completeness and accuracy of the database created and maintained by Logan in accordance herewith.

C. Logan further agrees to provide Customer with consulting and computer software support regarding the reporting and information management requirements of the bankruptcy administration process.

D. Logan further agrees to educate and train Customer in the use of the support software and provide Logan's Standard Reports as well as consulting and programming support for Customer-requested reports, program modifications, database modification, and/or other features in accordance with the Fee Schedule annexed hereto.

E. Should Logan be requested to provide assistance in preparing Customer's Schedules at Customer's place of business, Customer agrees to provide Logan adequate accommodations to perform such services. Such accommodations shall include, but not be limited to, a private office or conference room in which three people can work comfortably and that may be locked, three data lines, three telephone lines, two laser printers comparable to HP 4050 or HP 4100, and availability to high speed copiers and facsimile machines. In addition, Customer agrees to provide Logan twenty-four hour security access to the premises.

## II. PRICES, CHARGES, AND PAYMENT

A. Logan agrees to charge and Customer agrees to pay Logan's standard prices for its services, expenses, and supplies at the rates or prices in effect on the day such services and/or supplies are provided to Customer at the request of Customer or Customer's professionals, in accordance with the Fee Schedule annexed hereto, and made part hereof it being understood that Customer will pay (i) Logan by wire transmission of funds for all (a) legal publications costs and (b) postage for any mailing to at least 500 creditors, before such publication or mailing, as the case may be, and (ii) outside third parties (such as banks, brokers, ADP, nominees, intermediaries, or agents) directly for any costs incurred in mailing notices, ballots, or any pleadings to shareholders, bondholders, or any other parties.

2

B.   Logan's prices, charges, and rates are subject to adjustment annually in July.

C.   Customer agrees to pay Logan for any necessary out-of-pocket expenses incurred for transportation, lodging, meals, and related items.

D.   Customer agrees to make an advance payment to Logan by wire transfer to be applied to the final bill in an amount equal to $35,000.00 (the "Retainer") at the time Customer executes this Agreement. The Retainer will not be used for monthly invoices, but held as cash collateral for security of payment of Logan's final invoice for services rendered and expenses incurred. Should there remain any outstanding amounts due for services Logan provided before the filing of the bankruptcy case(s), however, then Logan shall be entitled to apply the Retainer to such outstanding amounts and Customer agrees to replenish the Retainer by wire transfer in the same amount set off within two business days of notice of the setoff. In addition to the Retainer, Customer will use its best efforts to cause Logan and its fees and expenses to be included in any provision made for the payment of administrative expenses out of any secured creditor's collateral or use of cash collateral on par with the payment of any fees accruing in favor of the Office of the United States Trustee, including, without limitation, any "carve out" agreed upon by Customer and any of its creditors.

E.   Logan agrees to submit an invoice to the Customer for each calendar month in which work was performed, in a reasonable time frame. Customer agrees that the amount invoiced is due and payable upon its receipt of the invoice. If any amount is unpaid as of 30 days from the receipt of the invoice, Customer further agrees to pay a late charge, calculated as one and one-half percent (1 1/2%) per month on the amount unpaid, accruing from the invoice date. In the case of a dispute in the invoice amount, Customer shall give written notice to Logan within ten (10) days of receipt of the invoice. Interest shall not accrue on any amounts in dispute in good faith. The balance of the invoice amount not in dispute is due and payable in the normal course.

III.   WARRANTY

A.   Rerun time will be at the cost and expense of Customer except when it is established that machine error or a Logan employee error required such rerun. Accuracy and adequacy of Customer's information are the responsibility of Customer. Customer, in accepting the use of the program, acknowledges the adequacy of the program for its intended use. Logan shall not be liable for non-performance or delay of performance hereunder should such arise out of causes beyond its reasonable control.

3

Such causes may include, but are not limited to, acts of God or a public enemy, fire, electrical or machine failure, strike, lockout, governmental order or regulation, or any other cause, whether similar or dissimilar.

B.      Customer agrees that Logan's limited warranty contained in this Agreement is in lieu of all warranties, expressed or implied, including, but not limited to, any implied warranty of merchantability, fitness, or adequacy for any particular purpose or use, quality, or productiveness, or capacity. This paragraph shall supersede any paragraph of this Agreement deemed inconsistent with it.

C.      Customer warrants that it will maintain adequate supporting material to enable Logan to regenerate disk files, mass storage files, printer output, and other data furnished or transmitted to Logan by Customer. If the loss of such data is due to Logan's machine failure or its negligence, Logan's liability in any such loss shall be limited to the cost required, at Logan's current rate, to regenerate such lost data from Customer's supporting material on Logan's equipment deemed most suitable by Logan for such regeneration. If Customer has not maintained such adequate supporting material, Logan's liability shall be limited to the same cost as if Customer had done so. Adequate supporting material is defined as exact copies of the diskettes, compact discs, soft copies, or other data furnished to Logan except for records or data which are not in machine-readable form (e.g., typewritten or handwritten source documents) unless such non machine-readable form was furnished to Logan. In no event shall Logan's liability under this paragraph exceed its liability as set forth elsewhere in this Agreement.

D.      Logan shall have no liability for the loss of any data at Customer's remote terminal site or through telephone communication facilities while transmitting to or from Logan's data center.

E.      Logan warrants that it will maintain daily back-ups of all Customer data and provide system security as to the access of Customer's data files.

## IV.    RIGHTS OF OWNERSHIP AND SECURITY INTEREST

A.      The parties understand that the software programs and other materials furnished by Logan pursuant to this Agreement and/or developed during the course of this Agreement by Logan are the sole property of Logan. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, sub-routines, procedural manuals, and documentation. Customer agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement.

4

B.  Customer further agrees that any ideas, concepts, know-how, or techniques relating to data processing or Logan's performance of its services developed during the course of its Agreement by Logan shall be the exclusive property of Logan.

C.  Logan further agrees that all non-proprietary records, data, files, input material, report forms, and other non-proprietary data received, computed, developed, used, and/or stored pursuant to this Agreement are the exclusive property of Customer (collectively, "Customer Property") and that all such Customer Property shall be furnished without additional charge, except for actual processing costs, to Customer in available machine-readable form as soon as practicable upon termination of this Agreement for any reason whatsoever, provided, however, that it is understood that Logan shall have a possessory security interest in all Customer Property.

D.  Furthermore, upon Customer's request at any time or times while this Agreement is in effect, Logan shall, as soon as practicable, deliver to Customer at Customer's sole expense, any or all of Customer Property, in the form requested by Customer; provided, however, that Customer shall have fulfilled its obligations to Logan under Section II above.

V.  NON-SOLICITATION

Customer agrees that neither it nor its subsidiaries or other affiliated companies shall directly or indirectly solicit for employment, employ, or otherwise retain staff of Logan during the term of this Agreement, nor for a period of twelve (12) months after termination of this Agreement unless mutually agreed upon by both parties.

VI.  CONFIDENTIALITY

Logan agrees to treat confidentially and keep confidential all Customer records and other information.  Customer on behalf of itself and its employees agrees to keep all information with respect to Logan's system, procedures, and software confidential; provided, however, that if either party is required to produce any such information by order of any court, governmental agency, or other regulatory body it may, upon not less than five business days' written notice to the other party, release the required information.

VII.  SUSPENSION OF SERVICES AND TERMINATION

A.  Logan may suspend performance hereunder effective immediately upon written or telegraphic notification to Customer if Customer is in default under any term hereof and may terminate this Agreement if such default shall not be cured within ten (10) days after such notification.  Customer's

obligation to pay all charges, which shall accrue up to and including said termination date, shall survive any termination hereof. Customer agrees that, once its bankruptcy petition is filed, it will seek such authority from the Bankruptcy Court to give effect to this provision post-bankruptcy filing. Pre-bankruptcy filing, this provision is effective upon execution of this Agreement.

B.    This Agreement may be terminated by either party, without cause, upon ninety (90) days' prior written notice of such termination subject to Paragraph XV hereof.

C.    In the event that this contract is terminated, regardless of the reason for such termination, Logan shall cooperate with Customer to maintain an orderly transfer of record keeping functions and shall provide all necessary staff, services, and assistance required for an orderly transfer, provided Customer has fulfilled its obligations under Section II above. Customer agrees to pay for such services in accordance with Logan's then existing prices for such services.

D.    Upon the Entry of Order Terminating Logan's Services, we reserve the right to shred all undeliverable mail.

## VIII.  SYSTEM IMPROVEMENTS

Logan's policy is to provide continuous improvements in the quality of service to Customer. Logan, therefore, reserves the right to make changes in operation procedures, operating systems, programming languages, application programs, time period of accessibility, equipment, and the Logan data center serving Customer.

## IX.  LIMITATIONS OF LIABILITY AND INDEMNIFICATION

A.    Customer shall indemnify and hold Logan (as defined above) harmless against any losses, claims, damages, judgments, liabilities, and expense (including reasonable counsel fees and expenses) resulting from action taken or permitted by Logan in good faith with due care and without gross negligence in reliance upon instructions received from Customer as to anything arising in connection with its performance under this Agreement. Logan shall be without liability to Customer with respect to anything done or omitted to be done, in accordance with the terms of this Agreement or instructions properly received pursuant hereto, if done in good faith and without gross negligence or willful or wanton misconduct.

B.    In no event shall Logan be liable to Customer or its creditors or estate for any losses or damages, whether direct or indirect, arising out of this Agreement in excess of the total amount billed or billable to Customer for

6

the portion of the particular work which gave rise to the loss or damage. In no event shall Logan be liable for any indirect, special, punitive, or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement.

X.   NOTICES

All notices and requests in connection with this Agreement shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following their deposit in the U.S. Mail, postage pre-paid, on the day transmitted if sent by facsimile, or on the day following the day mailed if sent by overnight courier to the appropriate address set forth below:

| | |
|---|---|
| Logan & Company, Inc. | RPM, Inc. |
| 546 Valley Road, Second Floor | 4515 St. Clair Avenue, |
| Upper Montclair, New Jersey 07043 | Cleveland, Ohio 44103 |
| Attn: Kathleen M. Logan, President | Attn: |
| Tel: (973) 509-3190 | Tel: |
| Fax: (973) 509-3191 | Fax: |

or such other address as the party to receive such notices or requests so designates by written notice to the other.

XI.   APPLICABLE LAW

This Agreement shall be construed in accordance with the laws of the State of New Jersey and may be modified only by a written instrument duly executed by an authorized representative of Customer and an officer of Logan.

XII.   ENTIRE AGREEMENT/MODIFICATIONS

A.   Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, and other agreements, oral and written, between the parties relating to the subject matter of this Agreement. The Agreement may not be modified or altered except by written instrument duly executed by both parties. Customer represents it has the authority to enter into this Agreement, and the Agreement is non-dischargeable under any applicable statute or law.

B.   If any provision of this Agreement shall be held to be invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement effective as of the day and year hereinabove written.

**LOGAN & COMPANY, INC.**

By: _____

Title: _President_

Date: _May 24, 2010_

**CUSTOMER**

By: _____

Title: _Chairman + CEO_

Date: _5/24/10_

9



August 29, 2014


Mr. Edward W. Moore
2628 Pearl Road
Medina, OH 44258

Dear Mr. Moore:

Logan & Company, Inc. ("Logan") agrees to be the claims, noticing and balloting agent of NMBFiL, Inc. and Republic Powered Metals, Inc. (together, the "New Debtors") and, upon request, to aid the New Debtors in preparing their schedules of assets and liabilities and/or statements of financial affairs, on the same terms as provided in the Service Agreement, dated May 14, 2010  between Logan and RPM, Inc. (the "Service Agreement"), which was attached as Exhibit B to the Motion of the Debtors For An Order (I) Appointing Logan & Company, Inc. As Claims and Noticing Clerk and (II) Approving Form and Manner of Notice of the Commencement of These Chapter 11 Cases [D.I.4]. The New Debtors agree to retain Logan, as of August 15, 2014, on the same terms as provided in the Service Agreement, provided that NMBFiL, Inc. has no obligation to provide a retainer to Logan and the parties acknowledge that Republic Powered Metals, Inc. has satisfied its obligation to provide a retainer by making an advance payment to Logan of $10,000.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date hereof.


LOGAN & COMPANY

By: _____

Title:  President

Date:  August 29, 2014


NMBFiL, INC.

By: _____

Title: _____

Date: _____

REPUBLIC POWDERED METALS, INC.

By: _Edward Moore_

Title: _Secretary_

Date: _8/29/14_

# EXHIBIT C

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| SPECIALTY PRODUCTS HOLDING CORP., | : | Case No. 10-11780 (PJW) |
| *et al.,*[1] | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |

**ORDER (I) DIRECTING THE JOINT ADMINISTRATION OF THE CHAPTER 11
CASES OF REPUBLIC POWDERED METALS, INC. AND NMBFiL, INC. AND
(II) EXTENDING TO THEM CERTAIN RELIEF GRANTED TO SPECIALTY
PRODUCTS HOLDING CORP. AND BONDEX INTERNATIONAL, INC.**

This matter coming before the Court on the Motion of Republic Powdered Metals,

Inc. and NMBFiL, Inc. For An Order (I) Directing the Joint Administration of Their Chapter 11

Cases and (II) Extending to Them Certain Relief Granted To Specialty Products Holding Corp.

and Bondex International, Inc. (the "Motion");[2] the Court having reviewed the Motion, the

Logan Declaration and the First Day Declaration and having heard the statements of counsel

regarding the relief requested in the Motion at a hearing before the Court (the "Hearing"); the

Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § l57(b)(2), (c) notice of the Motion

was sufficient under the circumstances and (d) the relief requested in the Motion is in the best

interests of the New Debtors' estates; and the Court having determined that the legal and factual

---

[1]     The Debtors are the following four entities (the last four digits of their respective taxpayer identification
numbers follow in parentheses):  Specialty Products Holding Corp. (0857); Bondex International, Inc.
(4125); Republic Powdered Metals, Inc. (4388); and NMBFiL, Inc. (2441).  The address of Specialty
Products Holding Corp. and Bondex International, Inc. is 4515 St. Clair Avenue, Cleveland, Ohio 44103.
The address of Republic Powdered Metals, Inc. and NMBFiL, Inc. is 2628 Pearl Road, Medina, Ohio
44256.

[2]     Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

bases set forth in the Motion, the Logan Declaration and the First Day Declaration and at the

Hearing establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.       The Motion is GRANTED.

2.       The New Debtors' chapter 11 cases shall be consolidated for procedural

purposes only and jointly administered with the Initial Debtors' chapter 11 cases.  Parties in

interest are directed to use the consolidated caption referring to the chapter 11 cases of "Specialty

Products Holding Corp., *et al.*," when filing a pleading with the Court in the Debtors' chapter 11

cases.

3.       A docket entry shall be made on the docket for the New Debtors

substantially as follows:

> An order has been entered in this case directing the procedural
> consolidation and joint administration of the chapter 11 cases of
> Specialty Products Holding Corp., Bondex International, Inc.,
> Republic Powdered Metals, Inc. and NMBFiL, Inc.  The docket of
> Specialty Products Holding Corp. in Case No. 10-11780 (PJW)
> should be consulted for all matters affecting this case.

4.       The New Debtors are authorized to list the names and addresses of the

asbestos plaintiff firms representing the Asbestos Claimants in lieu of the individual Asbestos

Claimants' addresses in their respective Creditor Matrices.

5.       The New Debtors are authorized to each file an Asbestos Creditor List of

the plaintiff firms with asbestos cases against each of the New Debtors in lieu of listing the

individual Asbestos Claimants with the largest unsecured claims against the New Debtors.

6.       The New Debtors are authorized to follow the Notice Procedures with

respect to the service of all notices, mailings and other communications related to their

chapter 11 cases.

DLI-6490766v6

7.      The Interim Compensation Order, as amended below, is extended to apply to the New Debtors.  The Interim Compensation Order is amended as follows:

- The New Debtors' Interim Fee Period shall commence with the period ending September 30, 2014.  The first Interim Fee Application for the period from each New Debtors' respective petition date through September 30, 2014 must be filed and served on or before December 1, 2014.

- The Debtors shall be responsible for paying allowed professional fees and expenses incurred in these chapter 11 cases based on the following allocations:  (a) for tasks performed for a specific Debtor, 100% by that Debtor except that Bondex's fees and expenses shall, as before, be paid by SPHC; (b) for tasks performed for the Initial Debtors, 100% by SPHC; (c) for tasks performed for the New Debtors, 50% by each New Debtor; (d) for tasks performed for the New Debtors plus SPHC and/or Bondex, 95% by SPHC, 2.5% by Republic and 2.5% by NMBFiL.[3]  The Monthly Fee Applications shall disclose the allocations made during that month.

8.      The OCP Order, as amended in this paragraph, is extended to apply to the New Debtors.  In the event the services of Ordinary Course Professionals are required by the New Debtors, the New Debtors shall file the quarterly statement of Ordinary Course Professionals required by paragraph 3(f) of the OCP Order with any such statement filed by the Initial Debtors.  The first such report for the New Debtors will be filed on October 15, 2014 for the period from each New Debtors' respective petition date through September 30, 2014.  The New Debtors shall provide the monthly reports required in paragraph 4 of the OCP Order beginning on October 15, 2014.

9.      The Fee Auditor Order is extended to apply to the New Debtors, with the exception of paragraph 11 of the Fee Auditor Order.

10.     The relief granted to the Initial Debtors in the Logan Order is extended to the New Debtors.  Logan is authorized to serve as claims and noticing clerk to the New Debtors

---

[3]     This allocation is based upon the respective book values of the assets of SPHC, Republic and NMBFiL.

DLI-6490766v6

on the terms and conditions set forth in the Logan Order and the engagement letter between the

New Debtors and Logan.


Dated: _____, 2014
       Wilmington, Delaware

                                               _____
                                               THE HONORABLE PETER J. WALSH
                                               UNITED STATES BANKRUPTCY JUDGE

DLI-6490766v6